**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION**

| | |
|---|---|
| MONOLITHIC POWER SYSTEMS, INC., a Delaware Corporation, <br><br> Plaintiff, <br><br> v. <br><br> VICOR CORPORATION, a Delaware corporation <br><br> Defendant. | C.A. No.: 7:26-cv-00257 <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Monolithic Power Systems, Inc. ("MPS" or "Plaintiff") files this Complaint against Vicor Corporation ("Vicor" or "Defendant") and hereby alleges as follows:

## THE NATURE OF THE ACTION

1. This is a civil action for patent infringement.

2. MPS is a world leader in the design, development, marketing, and sale of power semiconductor products, including power management solutions, such as power converter modules for use in, e.g., computer systems, datacenters and artificial intelligence (AI) centers. Founded in 1997, MPS has achieved significant growth year over year and great financial success due to its unmatched technical innovation and ability to offer high-performance products at scale, including power converter modules, while providing superior customer support. MPS's mission is to reduce total energy consumption in its customers' systems with practical, energy-efficient solutions. And through decades of innovation, MPS has amassed a large patent portfolio related to power distribution, power conversion topologies, power control systems, and power module technology, including U.S. Patent No. 8,064,202 ("the Asserted Patent"), which relates to a

sandwich structure for power modules. A true and correct copy of the Asserted Patent is attached hereto as Exhibit 1.

3. Vicor competes against MPS for customers of power converter modules, including power modules that are designed for the same applications as MPS's products.

4. Vicor has infringed and continues to infringe the Asserted Patent by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States power modules Vicor fabricates using SM-ChiP[1] module packaging, such as its non-isolated bus converter modules ("NBMs"), including, e.g., NBM2317, and induces others to do the same.

## THE PARTIES

5. MPS is a corporation organized and existing under the laws of Delaware, having its principal place of business at 5808 Lake Washington Boulevard NE, Kirkland, WA 98033.

6. Upon information and belief, Vicor is a corporation organized and existing under the laws of Delaware with its principal place of business at 25 Frontage Road, Andover, Massachusetts 01810.

## SUBJECT MATTER JURISDICTION

7. This court has subject matter jurisdiction over the patent infringement claims asserted in this case under 28 U.S.C. §§ 1331 and 1338(a).

## PERSONAL JURISDICTION, VENUE, AND JOINDER

8. This Court has personal jurisdiction over Vicor, whether general or specific, because Vicor has regularly conducted and continues to conduct business in the United States, in the State of Texas, and in this judicial district. Vicor is registered to do business in Texas with Texas Taxpayer ID #10427428171, and upon information and belief does substantial business in

---

[1] Surface-Mount Converter Housed in Package.

Texas and derives substantial revenues from its business in Texas.  Vicor also maintains a place of business in this District, including a facility at 1620 La Jaita Dr., Suite 100, Cedar Park, TX 78613.  This facility is also the principal place of business for Vicor subsidiary Freedom Power Systems, Inc., which is nothing more than an alter ego of Vicor.  In addition to operating this subsidiary from this location, Vicor also describes this office as an "additional location" for Vicor itself. (*See* Exhibit 5, Vicor Corporation Fact Sheet).

9.      On information and belief, Vicor has committed infringing activities in Texas and in this judicial district by making, using, offering for sale, and/or selling in the United States and/or importing into or exporting from the United States, power modules and systems that infringe upon the Asserted Patent, or by placing such infringing power modules and systems into the stream of commerce with the awareness, knowledge, and intent that they would be used, offered for sale, or sold by others in this judicial district and/or purchased by consumers in this district.

10.     On information and belief, Vicor assists its customers in Texas to integrate Vicor's infringing power modules and systems into their products for use by end-customers in Texas and elsewhere. Venue is proper as to Vicor pursuant to 28 U.S.C. §§ 1391(b) and 1400(b) because it has committed, and continues to commit, acts of infringement in this District and has a regular and established place of business in this District.

11.     Vicor is subject to this Court's general and/or specific jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to Vicor's substantial business in Texas, including through its subsidiary, because Defendant has and does conduct regular business in Texas and/or because Defendant has engaged in persistent conduct and/or has derived substantial revenues from goods and services provided to customers in Texas.

12.     As noted, Vicor lists as an "additional location[]" its location in Cedar Park (Austin)

Texas as a place of business for Vicor on its website:



*See* https://www.vicorpower.com/about-the-company/fact-sheet

13.     Additionally, on information and belief Vicor has a place of business in this district.

Vicor's website has job listings for an "Assoc Test Engineer" for Vicor listed for Cedar Park,

Texas:



*See* https://careers.vicorpower.com/search/?createNewAlert=false&q=&locationsearch=tx&optionsFacetsDD_dept=.
    Screenshot of webpage attached as Exhibit 3.

14.     The job posting for a Test Engineer specifies Cedar Park as the place of

employment:

**Assoc Test Engineer**

Cedar Park, TX, US, 78613
**Job Function:** Engineering
**Req ID:** 2081

*See* https://careers.vicorpower.com/job/Cedar-Park-Assoc-Test-Engineer-TX-78613/140942300/.

Screenshot of webpage attached as Exhibit 4.

15.    The job description requires working to modify and implement "off the shelf" infringing products as well as working with other Vicor employees designated as "Design Engineer[s]" and "Manufacturing Engineer[s]" in support of Vicor's customers:

> Job Description
> - Design, build and support proprietary ATE hardware and software for a variety of analog components and assemblies.
> - Analyze and implement "off the shelf" instrumentation components (GPIB, LXI (TCP/IP), USB, Serial).
> - Provide documentation at all stages of software/hardware development.
> - Work closely with Design Engineering to develop new test procedures.
> - Work closely with Manufacturing Engineering to support and optimize existing ATE.

16.    On information and belief, Vicor has other employees located in Cedar Park, Texas as well as a place of business in Cedar Park, Texas for its employees to work. On information and belief, Vicor actively recruits employees to work for Vicor in this District such that Vicor can support its customers located in this District. Such support would include the products accused of infringement. By actively maintaining a place of business in this District, employing employees to service customers in this District, and actively recruiting employees to service customers in this District, Vicor has an established place of business in this District.

## THE ASSERTED PATENT

17.    On November 22, 2011, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 8,064,202, entitled "Sandwich Structure with Double-Sided Cooling and EMI Shielding," listing Jian Yin, Hunt H. Jiang, and Kaiwei Yao as the inventors, from a patent application filed on February 24, 2010.

18.    MPS exclusively owns all rights, title, and interest in the Asserted Patent necessary to bring this action, including the right to recover past and future damages.

19.    Vicor is not licensed to practice the Asserted Patent.

20.     The Asserted Patent is valid and enforceable.

## FACTUAL BACKGROUND

21.     MPS was co-founded in 1997 by Michael Hsing in Los Gatos, California, USA.

22.     Since its founding, MPS has become an industry-leading fabless semiconductor company that designs, develops, markets, and sells power semiconductor products, including power converter products, for use in, e.g., computer systems, datacenters and AI centers.

23.     MPS has achieved significant growth year over year and great financial success due to its unmatched technical innovation and customer support. MPS has a large patent portfolio covering its power semiconductor products, including its power converter products, which are particularly important for AI, which requires enormous computing power. As the demand for AI increases, the demand for efficient delivery of power to run the numerous computer systems housed in AI centers and datacenters also increases. MPS's patented technologies, and its power converter products that implement them, provide the power solutions that meet this demand.  MPS includes notices such as "patent protected" on the datasheets that MPS provides to its customers and potential customers.

## INFRINGEMENT

24.     Vicor has infringed and continues to infringe one or more claims of the Asserted Patent by making, using, selling, offering for sale, and/or importing into the United States power modules Vicor fabricates using SM-ChiP module packaging, such as its non-isolated bus converter modules ("NBMs"), including, e.g., NBM2317, and inducing others, such as its customers, to do the same.

25.     SM-ChiP is described by Vicor as "a plated, overmolded package intended for surface-mount attachment to a printed circuit board and is compatible with CM manufacturing

techniques and equipment." https://www.vicorpower.com/resource-library/articles/innovating-power-module-packaging. The SM-ChiP package "integrates everything—passives, magnetics, FETs and control—into a single device." "Many SM-ChiPs also include grounded metal shielding over a significant surface of the device. This serves not only to facilitate cooling but also to localize high-frequency parasitic currents to keep them from propagating outside the device." https://www.vicorpower.com/resource-library/articles/high-performance-computing/powering-clustered-ai-processors. The Accused Products include Vicor's SM-ChiP packaged products, including at least NBMs (e.g., NBM2317), BCM bus converters, VTM current multipliers, PRM regulators, DCM converters. The Accused Products infringe the Asserted Patent in the United States and have applications in many types of downstream products designed and manufactured by Vicor's customers including, for example, boards, modules, systems, and servers for use in AI/datacenters.

26.     Exhibit 2 demonstrates how an exemplary Vicor Accused Product (NBM2317S60D1580T0R) meets the claim limitations of the Asserted Patent, and is incorporated herein by reference.

27.     On information and belief, Vicor manufactures the Accused Products in, or around, Andover, MA at its module fabrication facilities.

28.     Vicor markets and sells Accused Products both directly through its own marketing and sales employees and website, and, on information and belief, indirectly through a network of independent sales representatives and at least five distributors: Arrow Electronics, Inc.; Digi-Key Corporation; Avnet Electronics; Mouser Electronics, Inc.; and Macnica Galaxy Inc.

29.     Vicor maintains sales offices in the United States to market and sell Vicor Accused Products.

30.    On information and belief, Vicor assists its customers with the evaluation and testing of the Accused Products on Vicor evaluation boards and assists its customers with the evaluation and testing of the Accused Products on its customers' board implementations of their products in the United States and elsewhere. On information and belief, Vicor field application engineers ("FAEs") based in the United States and elsewhere provide technical support to Vicor's customers in the U.S. and elsewhere, and Vicor's product development engineers and application engineers located, e.g., at Vicor's headquarters in Massachusetts and elsewhere, further support Vicor's FAEs and customers.

31.    On information and belief, Vicor, itself, or in concert with its authorized distributors, causes or induces others, such as contract manufacturers or end customers to incorporate the Accused Products in down-stream products, such as boards, modules, systems, and servers for use in AI/datacenters, that are then made, used, offered to be sold, or sold within the United States, or imported into the United States.

32.    Vicor actively induces infringement by its customers by providing datasheets, other technical and marketing materials, evaluation boards and power system configuration software tools (such as its Power System Configurator tool available on its website at https://www.vicorpower.com/vicor-tools/lab-tools/power-system-configurator) that actively encourage Vicor's customers to incorporate, use, and implement the Accused Products in their products, which are then manufactured, used, sold or offered to be sold in the United States, or imported into the United States.

33.    On information and belief, Vicor has had knowledge of the Asserted Patent since its issuance, because, as an active competitor to MPS, Vicor would have periodically investigated MPS's patent portfolio, particularly, on or about the time Vicor decided to assert its patents against

its competitors, including, e.g., Delta Electronics and MPS.  At the very least, Vicor has had knowledge of the Asserted Patent as of the filing of this Complaint.

34.    Vicor's infringement has been and continues to be willful.

35.    Upon information and belief, the Accused Products are, in relevant part, substantially similar to the exemplary power module shown in Exhibit 2, which is thus illustrative of the manner in which each of the Accused Products meets the claim limitations of the Asserted Patent.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 8,064,202

36.    MPS incorporates by reference and re-alleges all of the foregoing paragraphs of this Complaint and exhibits attached hereto as if fully set forth herein.

37.    The following allegations are based on publicly available information and a reasonable investigation of the structure and operation of the Accused Products. MPS reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that MPS obtains during discovery.

38.    Defendant's infringement has damaged and continues to damage MPS in an amount yet to be determined, of at least a reasonable royalty.

39.    Defendant has directly infringed the Asserted Patent under 35 U.S.C. § 271(a), as alleged above and shown in Exhibit 2. The Accused Products meet each and every one of the claim limitations of at least one claim of the Asserted Patent.

40.    As alleged above, Defendant has infringed and continues to infringe at least one claim of the Asserted Patent by making, using, offering to sell, selling within the United States, or importing into the United States the Accused Products.

41.    Defendant's infringement is and continues to be willful.

42.     As alleged above, Defendant has actively induced infringement under both 35 U.S.C. § 271(b) and § 271(f)(1) of at least one claim of the Asserted Patent.  Specifically, Defendant understands, intends, and encourages the Accused Products to be incorporated into its customers' products.  Defendant sells the Accused Products to its customers, either directly or indirectly, or through a supply chain knowing and intending that the Accused Products will be incorporated in its customers' products.

43.     As alleged above, Defendant has actively contributed to infringement under both 35 U.S.C. § 271(c) and § 271(f)(2) of at least one claim of the Asserted Patent, because the Accused Products constitute a material part of the infringing functionality of the Asserted Patent, and are knowingly made for use in an infringing downstream product, such as boards, modules, systems, and servers for use in AI/datacenters.  The Accused Products are not a staple article or commodity of commerce suitable for substantial noninfringing use.

44.     On information and belief, Defendant also sells or otherwise supplies the Accused Products in an infringing manner or otherwise supplies those Accused Products both to customers within the U.S. for evaluation for potential implementation in downstream products, as well as to customers outside the U.S., such as foreign contract manufacturers. End-customers' products, such as boards, modules, systems, and servers for use in AI/datacenters, are manufactured in the U.S. by customers or outside the U.S. by foreign contract manufacturers, and then imported into the U.S. for use by the foreign contract manufacturers' customers and/or sold throughout the U.S. by customers and their retailers.

45.     Infringement has damaged and continues to damage MPS in an amount yet to be determined, of at least a reasonable royalty.

46.     As a consequence of such infringement, MPS has suffered and will continue to suffer irreparable harm and injury, for example, in the form of lost sales, lost profits and loss of market share.  Unless enjoined, Defendant and/or others acting on behalf of Defendant will continue their infringing acts, thereby causing additional irreparable injury to MPS for which there is no adequate remedy at law.  Specifically, Defendant's actions will irreparably harm MPS's position in the power converter market by causing MPS to lose customers.

## DAMAGES

47.     As a result of these acts of infringement, MPS has suffered and continues to suffer actual and consequential damages.  However, MPS does not yet know the full extent of the infringement and the amount of damages cannot be ascertained except through discovery and special accounting.  To the fullest extent permitted by law, MPS seeks recovery of damages at least for reasonable royalties, lost profits, unjust enrichment, and benefits received as a result of using the patented technology.  MPS further seeks any other damages to which MPS is entitled under law or in equity, including enhanced damages for willful infringement.

## DEMAND FOR JURY TRIAL

48.     MPS hereby demands a jury trial for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, MPS respectfully requests that this Court enter judgment in its favor as follows:

A.     That Judgment be entered that Defendant has infringed one or more claims of the Asserted Patent, literally and/or under the doctrine of equivalents;

B.     That, in accordance with 35 U.S.C. § 283, Defendant and all its affiliates, employees, agents, officers, directors, attorneys, successors, and assigns and all those acting on

behalf of or in active concert or participation with any of them, be preliminarily and permanently enjoined from (1) infringing the Asserted Patent and (2) making, using, selling, and offering for sale in the United States, or importing into the United States the Accused Products;

C.      That MPS be awarded damages sufficient to compensate MPS for Defendant's infringement and enhanced damages under 35 U.S.C. § 284, and an accounting of lost sales not presented at trial and an award of additional damages for any such lost sales;

D.      That the case be found exceptional under 35 U.S.C. § 285 and that MPS be awarded its reasonable attorneys' fees;

E.      That MPS be awarded its costs and expenses in this action;

F.      That MPS be awarded damages for pre-issuance infringement under 35 U.S.C. § 154(d);

G.      That MPS be awarded prejudgment and post-judgment interest; and

H.      Such other and further relief as the Court may deem just and proper.

Dated: July 6, 2026

Respectfully submitted,

By: */s/ John P. Schnurer*

John P. Schnurer (Texas Bar 24072628)
Kevin Patariu (*PHV* forthcoming)
Miguel J. Bombach (CA Bar 274287)
Ray Wu (*PHV* forthcoming)
FOLEY & LARDNER LLP
11988 El Camino Real, Suite 400
San Diego, CA 92130
Ph: (858) 847-6700
john.schnurer@foley.com
kevin.patariu@foley.com
miguel.bombach@foley.com
ray.wu@foley.com

Michael Manookin (*PHV* forthcoming)
Ray Nelson (*PHV* forthcoming)
FOLEY & LARDNER LLP
95 S State Street, Suite 2500
Salt Lake City, UT 84111
Ph: (801) 401-8900
mmanookin@foley.com
srnelson@foley.com

Rachel Gillespie (Texas Bar 24144005)
FOLEY & LARDNER LLP
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Ph: (214) 999-3000
rgillespie@foley.com

*Attorneys for Plaintiff Monolithic Power
Systems, Inc.*