**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | |
|---|---|
| **MONOLITHIC POWER SYSTEMS, INC.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**VICOR CORPORATION,**<br><br>**Defendant.** | **Civil Action No. 7:26-cv-257-DC** |

**VICOR CORPORATION'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(3) OR, ALTERNATIVELY, TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(A), AND TO DISMISS WILLFULNESS CLAIMS PURSUANT TO RULE 12(B)(6)**

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. SUMMARY OF ARGUMENTS ..... 1

III. FACTUAL BACKGROUND ..... 2

A. This Case Has Nothing to Do with the Western District of Texas ..... 2

B. Vicor Has No Regular and Established Place of Business in this District ..... 2

IV. ARGUMENT ..... 4

A. Venue Is Improper Because Only Vicor's Separate Subsidiary Operates in This District, and the Case Should Be Dismissed or Transferred to Delaware ..... 4

1. Venue Lies Only Where a Defendant Resides or Maintains a Regular and Established Place of Business, and Transfer Turns on Convenience and the Interest of Justice ..... 4

2. Vicor Does Not Reside in the Western District of Texas nor Does it Have a "Regular and Established Place of Business" in the District ..... 6

3. Even if Venue Was Proper, This Case Should Still Be Transferred. ..... 8

B. MPS's Willful Infringement Claims Should Be Dismissed Because MPS Has Not Plausibly Alleged Vicor Had Knowledge of the Patent ..... 11

1. Pleading Willful Infringement Requires Facts Showing Knowledge of the Patent and of the Infringement ..... 12

2. MPS Does Not Plausibly Allege Pre-Suit Knowledge of the '202 Patent ..... 12

3. MPS Does Not Plausibly Plead Pre-Suit Knowledge of Infringement ..... 13

4. The Complaint Itself is Insufficient to Establish the Requisite Knowledge for Willfulness ..... 14

5. Even Crediting Knowledge, MPS Alleges No Egregious Conduct Warranting Enhanced Damages .................................. 15

V. CONCLUSION ......................................................................................... 15

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Action Indus., Inc. v. U.S. Fid. & Guar. Co.*,
358 F.3d 337 (5th Cir. 2004) ....................5

*Ambraco, Inc. v. Bossclip, B.V.*,
570 F.3d 233 (5th Cir. 2009) ....................5

*Andra Grp., LP v. Victoria's Secret Stores*,
6 F.4th 1283 (Fed. Cir. 2021) ....................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................13

*Boston Sci. Corp. v. Nevro Corp.*,
560 F. Supp. 3d 837 (D. Del. 2021) ....................14

*Cannon Mfg. Co. v. Cudahy Packing Co.*,
267 U.S. 333 (1925) ....................1, 7

*Cleveland Med. Devices Inc. v. ResMed Inc.*,
No. 22-794, 2023 WL 6389628 (D. Del. Oct. 2, 2023) ....................14

*In re Cray Inc.*,
871 F.3d 1355 (Fed. Cir. 2017) ....................5, 6

*Datanet LLC v. Dropbox Inc.*,
No. 6:22-cv-1142, 2023 WL 7118041 (W.D. Tex. Oct. 27, 2023) ....................12, 15

*Dental Monitoring SAS v. Align Tech., Inc.*,
No. 22-cv-07335, 2023 WL 4297570 (N.D. Cal. June 30, 2023) ....................12

*EMA Electromechanics, Inc. v. Siemens Corp.*,
No. 6:21-cv-1001, 2022 WL 1241967 (W.D. Tex. Apr. 26, 2022) ....................5

*Finjan, Inc. v. Cisco Sys., Inc.*,
No. 17-cv-72, 2017 WL 2462423 (N.D. Cal. June 7, 2017) ....................13

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009) ....................8

*In re Google*,
No. 21-171, 2021 WL 4592280 (Fed. Cir. Oct. 6, 2021) ....................9

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
579 U.S. 93 (2016) ....................12

*In re Hoffmann-La Roche Inc.*,
587 F.3d 1333 (Fed. Cir. 2009)....................11

*Intirion Corp. v. College Prods.*,
669 F. Supp. 3d 650 (W.D. Tex. Apr. 11, 2023) ....................6

*Kirsch Rsch. & Dev., LLC v. Tarco Specialty Prods.*,
2021 WL 4555802 (W.D. Tex. Oct. 4, 2021)....................12

*Optic 153 LLC v. Thorlabs Inc.*,
2020 WL 3403076 (W.D. Tex. June 19, 2020) ....................6, 7

*Orlando Commc'ns v. LG Elecs.*,
No. 6:14-cv-1017, 2015 WL 1246500 (M.D. Fla. Mar. 16, 2015)....................15

*In re Pandora Media LLC*,
No. 21-172, 2021 WL 4772805 (Fed. Cir. Oct. 13, 2021) ....................9

*In re Radmax*,
720 F.3d 285 (5th Cir. 2013) ....................9

*In re Samsung Elecs. Co.*,
2 F.4th 1371 (Fed. Cir. 2021) ....................11

*Skysong Innovations, LLC v. CrowdStrike, Inc.*,
No. 7:25-CV-00040-DC-DTG, 2026 WL 454991 (W.D. Tex. Feb. 2, 2026), *report and recommendation adopted*, 2026 WL 451426 (W.D. Tex. Feb. 17, 2026)....................1, 11, 15

*Sonos, Inc. v. Google*,
591 F. Supp. 3d 638 (N.D. Cal. 2022)....................15

*SynKloud Techs., LLC v. Dropbox, Inc.*,
No. 6:19-CV-00525-ADA, 2020 WL 2494574 (W.D. Tex. May 14, 2020)....................9

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
581 U.S. 258 (2017) ....................1, 4

*Tuchman v. DSC Commc'ns Corp.*,
14 F.3d 1061 (5th Cir. 1994) ....................14

*VE Opening LLC v. Dropbox, Inc.*,
No. 7:25-cv-00538-DC-DTG, 2026 WL 2065887 (W.D. Tex. July 1, 2026)....................5

*VirtaMove, Corp. v. Google LLC*,
No. 7:24-cv-00033-DC-DTG, 2025 WL 2634158 (W.D. Tex. May 7, 2025) ....................9

*In re Vistaprint*,
628 F.3d 1342 (Fed. Cir. 2010)....................10

*VLSI Tech. LLC v. Intel Corp.*,
No. 18-966, 2019 WL 1349468 (D. Del. Mar. 26, 2019)....................14

*In re Volkswagen AG*,
371 F.3d 201 (5th Cir. 2004)....................10

*In re Volkswagen of Am., Inc.*,
566 F.3d 1349 (Fed. Cir. 2009)....................10

*In re Volkswagen*,
545 F.3d 304 (5th Cir. 2008)....................1, 5, 8, 10

*ZapFraud, Inc. v. Barracuda Networks, Inc.*,
528 F. Supp. 3d 247 (D. Del. 2021)....................14, 15

*In re ZTE (USA) Inc.*,
890 F.3d 1008 (Fed. Cir. 2018)....................5

**Statutes**

28 U.S.C. § 1400(b)....................4

28 U.S.C. § 1404(a)....................1, 4, 5, 9

28 U.S.C. § 1406(a)....................4

**Other Authorities**

Fed. R. Civ. P. 12(b)(3)....................1, 4

Fed. R. Civ. P. 12(b)(6)....................1

## I. INTRODUCTION

This case has no connection to the Western District of Texas, and Vicor, in particular, has no regular place of business here. Venue is therefore improper, and the case should be dismissed or transferred. Moreover, the complaint includes no facts plausibly alleging that supposed infringement by Vicor was knowing, let alone willful. MPS's willful infringement claim is thus not properly pled and should be dismissed.

## II. SUMMARY OF ARGUMENTS

1. The Court should dismiss the Complaint under Rule 12(b)(3) for improper venue, because Vicor neither resides in this District nor maintains a regular and established place of business here, and because MPS's venue theory rests entirely on the presence of Vicor's subsidiary, Freedom Power Systems. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 262 (2017); *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 334–35 (1925).

2. Even if the Court determines that venue is proper, the Court should still transfer this action to the District of Delaware under 28 U.S.C. § 1404(a), because MPS first filed this same case there, because a related action between the parties remains pending, and because the parties, witnesses, and evidence are all closer to Delaware than to this District. *In re Volkswagen*, 545 F.3d 304, 312–15 (5th Cir. 2008) ("*Volkswagen II*").

3. The Court should dismiss MPS's willful infringement claim under Rule 12(b)(6), because MPS alleges only "upon information and belief" that Vicor knew of the '202 patent and its alleged infringement before suit, but it does not plead any facts plausibly supporting that alleged knowledge. *Skysong Innovations, LLC v. CrowdStrike, Inc.*, No. 7:25-CV-00040-DC-DTG, 2026 WL 454991 (W.D. Tex. Feb. 2, 2026), *report and recommendation adopted*, 2026 WL 451426 (W.D. Tex. Feb. 17, 2026).

## III. FACTUAL BACKGROUND

### A. This Case Has Nothing to Do with the Western District of Texas

Vicor, based in Massachusetts, and Monolithic Power Systems ("MPS"), with principal places of business in Washington, Florida, and California, are competitors in the market for DC-DC power converter modules. On May 4, 2026, MPS filed two patent infringement complaints against Vicor in Delaware. Dkt. 1 at ¶¶ 12–15. MPS then voluntarily dismissed one of those complaints (after failing to serve it) and refiled this identical suit in this District two months later.

Though MPS withdrew its Delaware complaint and refiled this suit in the Western District of Texas, the case has no connection to this District. MPS is a Delaware company, with its principal places of business in Kirkland, Washington, San Jose, California, and West Palm Beach, Florida. Dkt. 1 (Complaint) at ¶ 5; Ex. A (MPS Website – North American Locations) at 2. Vicor is a Delaware Corporation, with its headquarters in Massachusetts. Dkt. 1 at ¶ 6.

The Complaint alleges that Vicor infringes MPS's '202 patent by making and selling power conversion modules. *Id.* at ¶ 4. But the '202 patent was obtained by MPS inventors based in San Jose, California, Dkt. 1, Ex. 1 ('202 patent) at page 1 (75), using a law firm based in Seattle. Ex. B (Feb. 24, 2010, Decl. for Patent Application) at 3–4; Ex. C (Current Prosecuting Attorney Bio). It has no connection to this District. Conversely, Vicor's accused power conversion modules were designed, and are made and sold, by Vicor employees based in Massachusetts, not Texas. Ex. D (Fendelet Decl.) at ¶¶ 9–12.

### B. Vicor Has No Regular and Established Place of Business in this District

MPS alleges, as it must to establish venue, that Vicor maintains a regular and established place of business in this District. Dkt. 1 at ¶¶ 8–10. But MPS's allegation is false, as Vicor has no facilities in Texas. MPS contends that a facility in Cedar Park, Texas, is a Vicor place of business,

but that facility is neither owned nor operated by Vicor. Ex. D at ¶¶ 7–8; Ex. E (Morgan Decl.) at ¶¶ 7–8.

Rather, the location in question is the headquarters of a Vicor *subsidiary*, Freedom Power Systems ("FPS"), an entity whose business, product line, employees, management, and board of directors are entirely distinct from Vicor's. FPS is a wholly owned indirect subsidiary of Vicor and was acquired by Vicor in 1995. Ex. D at ¶ 4; Ex. E at ¶ 4. While Vicor's business is mass producing power conversion modules (components which are built into electronic circuit boards by Vicor customers), FPS's business is providing services -- custom design, manufacturing, and testing – for its customers, and multi-component power systems that are distinct from the products Vicor makes. Ex. E at ¶¶ 3, 9. Vicor and FPS also maintain separate corporate structures: they share no officers or directors, keep separate bank accounts, books, and financial records, and FPS funds its own employees' salaries and benefits, including separate dental and 401(k) plans. Ex. D at ¶¶ 5–6; Ex. E at ¶¶ 5–6. It is FPS, not Vicor, that leases and operates its business out of the Cedar Park facility. Ex. E at ¶¶ 7–8. Vicor in fact does not own or lease any property in this District. Ex. D at ¶ 7.

FPS also has no role in making, selling, or offering to sell the Vicor products accused of infringement in this case; FPS sells multi-component power systems that incorporate electronic components from various sources, including Vicor and others, Ex. D at ¶ 9; Ex. E at ¶¶ 3, 9. Vicor designs, manufactures, and sells the accused products in Andover, Massachusetts. Ex. D at ¶¶ 9–12. The vast majority of Vicor's employees are in Andover, and it has no permanent employees in this District. *Id.* at ¶ 12. If Vicor has material witnesses and documents related to this case, they are likely to be in or around Andover, where the accused products were designed and are made. *Id.* at ¶ 13. Vicor is unaware of any witnesses or relevant documents in this District. *Id.*

The Cedar Park job posting on Vicor's website referenced in MPS's complaint is not to the contrary. Vicor provides its subsidiary with in-kind support by allowing it to use certain of Vicor's recruiting and human resources facilities, including by posting jobs on its website. The posting in question advertises a single, unfilled test-engineering position at the Cedar Park facility. But FPS, not Vicor, operates that facility, and only FPS employees work there. Vicor conducts no business from that location. Ex. D ¶¶ 7–8, 12; Ex. E at ¶¶ 7–8. The advertised position supports the custom power-system integration and testing services that are FPS's business, Ex. E at ¶¶ 3 and 10, not the design, manufacture, or sale of the accused (or any other) Vicor products, activities which Vicor conducts out of its principal facility in Andover, Massachusetts. Ex. D at ¶¶ 9–11 and 14.

## IV. ARGUMENT

### A. Venue Is Improper Because Only Vicor's Separate Subsidiary Operates in This District, and the Case Should Be Dismissed or Transferred to Delaware

This Court should dismiss this case under Fed. R. Civ. P. 12(b)(3) for lack of venue. In the alternative, it should transfer the case to the District of Delaware, pursuant to 28 U.S.C. § 1406(a) because venue is improper here, or pursuant to 28 U.S.C. § 1404(a), because Delaware is a proper and far more convenient venue.

#### 1. Venue Lies Only Where a Defendant Resides or Maintains a Regular and Established Place of Business, and Transfer Turns on Convenience and the Interest of Justice

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, ***or*** where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Venue is therefore proper in this District only if the defendant "resides" or "has a regular and established place of business" here.

For purposes of this statute, a domestic corporation "resides" in a district if it is incorporated in the state in which the district is located. *TC Heartland LLC v. Kraft Foods Grp.*

*Brands LLC*, 581 U.S. 258, 262 (2017). If a defendant is not incorporated in Texas, then venue is proper in this District under the "regular and established place of business" prong only if three requirements are met: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). "All of these requirements must be present," and it is insufficient to merely establish "the minimum contacts necessary for establishing personal jurisdiction or for satisfying the doing business standard of the general venue provision." *Id.* at 1362.

Once challenged, the burden of sustaining venue lies with the plaintiff. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018); *VE Opening LLC v. Dropbox, Inc.*, No. 7:25-cv-00538-DC-DTG, 2026 WL 2065887, at *1 (W.D. Tex. July 1, 2026). Moreover, the court is not limited to the complaint when evaluating venue and may consider evidence submitted by the parties. *Ambraco, Inc. v. Bossclip, B.V.*, 570 F.3d 233, 237–38 (5th Cir. 2009); *EMA Electromechanics, Inc. v. Siemens Corp.*, No. 6:21-cv-1001, 2022 WL 1241967, at *7 (W.D. Tex. Apr. 26, 2022) (noting trend among courts is to accept well-pleaded facts "only to the extent that such facts are uncontroverted by [a] defendant's affidavit").

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The preliminary question under section 1404(a) is "whether a civil action 'might have been brought' in the [transfer] destination venue." *In re Volkswagen*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). If the destination venue would have been proper, then "[t]he determination of 'convenience' turns on a number of public and private interest factors." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004).

### 2. Vicor Does Not Reside in the Western District of Texas nor Does it Have a "Regular and Established Place of Business" in the District

Venue is improper in this District because MPS cannot show that Vicor "resides" in the Western District of Texas, nor can it show that Vicor has a "regular and established place of business" in this District. To the contrary, the evidence submitted by Vicor with this motion conclusively shows that venue is not proper under either prong of the statute.

First, MPS concedes that Vicor does not reside here. In its complaint, MPS acknowledges that Vicor is a Delaware corporation with a principal place of business in Massachusetts. Dkt. 1 at ¶ 6. MPS's allegation that "Vicor is registered to conduct business in Texas," *id.* at ¶ 8, is irrelevant to the venue analysis. *See Optic 153 LLC v. Thorlabs Inc.*, 2020 WL 3403076, at *2 (W.D. Tex. June 19, 2020) ("The mere fact that Defendant is registered and earns revenue in Texas has no bearing on the Court's venue analysis").

MPS's "place of business" venue theory also fails. That theory is based entirely on two references to the Cedar Park location on Vicor's website: a statement that identifies Cedar Park as an "additional location," and a job posting for a position there. Dkt. 1 at ¶¶ 12–15. But mere mentions of Cedar Park on a website do not satisfy the relevant test, which is to show that Vicor Corporation regularly conducts business there. *See Intirion Corp. v. College Prods.*, 669 F. Supp. 3d 650, 656–57 (W.D. Tex. Apr. 11, 2023) (that a company markets itself on its website as doing business in a forum does not prove it actively engages in business there). And the sworn declarations from both Vicor and FPS preclude such a finding. Rather, they confirm that ***only FPS actually operates a business at the Cedar Park location***. Ex. D at ¶¶ 7–8; Ex. E at ¶¶ 7–8. That Vicor allows FPS to use Vicor's high traffic website to publicize FPS's location and to recruit FPS employees does not change that fact. Under *Cray*, it is the physical "place of business," not a website, that must actually be established and operated by the defendant. 871 F.3d at 1363.

The mere presence of a Vicor subsidiary, FPS, at a facility in Cedar Park, Texas, Dkt. 1 at ¶¶ 8, 11, is irrelevant to the venue analysis. It is Vicor, not FPS, that is accused of patent infringement in this case, and it is Vicor, not FPS, which must be shown to have a place of business here. That distinction is dispositive. *See Cannon Manufacturing*, 267 U.S. at 334–35 (holding that even if a parent corporation controls a subsidiary's operations and the companies share a unitary business purpose, the subsidiary's presence in a venue cannot be imputed to the parent absent disregard for corporate separateness); *see also Andra Grp., LP v. Victoria's Secret Stores*, 6 F.4th 1283, 1289 (Fed. Cir. 2021) ("But where related companies have maintained corporate separateness, the place of business of one corporation is not imputed to the other for [patent] venue purposes."); *Optic 153 LLC v. Thorlabs Inc.*, 2020 WL 3403076, at *2 (W.D. Tex. June 19, 2020) ("The presence of a wholly-owned subsidiary is not sufficient to establish venue for the parent corporation, except in the very narrow circumstance where entities 'lack formal corporate separateness, which is a difficult standard to meet and requires proof that the corporations disregard their separateness and act as a single enterprise.'").

MPS does not allege any facts supporting the narrow exceptions to this rule. MPS's mere assertion that FPS is an alter ego of Vicor, Dkt. 1 at ¶ 8, is a legal conclusion unsupported by any well-pleaded fact, and it is refuted by the Fendelet and Morgan declarations, which establish that Vicor and FPS rigorously observe corporate separateness in every respect. Ex. D at ¶¶ 5–10; Ex. E at ¶¶ 5–8. *See* supra § III.B (Vicor and FPS share no officers or directors; keep separate accounts, books, payroll, and benefits; FPS alone leases and operates the Cedar Park facility; and Vicor has no property, operations, or employees in this District). And FPS has no role in making or selling Vicor products; it provides services and multi-component power systems that are distinct from the products Vicor makes. Ex. D at ¶¶ 5–13; Ex. E at ¶¶ 5–9. *See* supra § III.B.

### 3. Even if Venue Was Proper, This Case Should Still Be Transferred.

Even if venue were proper in this District, the Court should still transfer to Delaware. There is no question this action might have been brought in Delaware: MPS brought it there first, filing the identical case (No. 1:26-cv-00514) on May 4, 2026, before voluntarily dismissing it and refiling here. Vicor is incorporated in Delaware and resides there for venue purposes. Vicor has no connection to the Western District of Texas.[1] To transfer, Vicor need only show that Delaware is clearly more convenient than this forum. *Volkswagen II*, 545 F.3d at 315. In fact, Delaware is far more convenient than this District, and both the private and public interest factors favor transfer.

#### a. The Private Factors Favor Transfer Because the Relevant Proof and Witnesses Are Near Delaware, Not This District

The first private factor – "the relative ease of access to sources of proof" – favors transfer. The accused products were not designed, manufactured, or sold out of this District. Ex. D at ¶¶ 9–13. Nor are there relevant sources of proof in this District pertaining to the accused products. *Id.*[2] No Vicor employees who work on making or selling the accused products reside in this District. *Id.* And Delaware is substantially closer to Vicor's headquarters in Massachusetts, where Vicor employees design and manufacture the accused products. Access to Vicor's relevant physical documents and witnesses would thus be relatively much more convenient if the parties were

[1] Moreover, MPS filed in the Midland-Odessa Division, which has no connection to this dispute or to any party in any event; even the Cedar Park facility on which MPS's venue theory depends lies in the Austin Division, several hundred miles away.

[2] Even though technology permits digital transfer of documents, courts still look to where evidence is stored, *Volkswagen* II, 545 F.3d at 316, and recognize that "the bulk of the relevant evidence usually comes from the accused infringer." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).

instead litigating in Delaware. "[T]he question is *relative* ease of access, not absolute ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original).

There is also no connection between this District and the inventive activities of MPS, a Delaware corporation whose principal places of business are in Washington, California, and Florida. Dkt. 1 at ¶ 5; Ex. A at 2. The three named inventors appear to all reside in San Jose, California, Dkt. 1, Ex. 1 at page 1 (75), and the attorney who prosecuted the '202 patent was based in Seattle. Ex. B (Feb. 24, 2010 Decl. for Patent Application) at 3–4; Ex. C (Current Prosecuting Attorney Bio).

Thus, the first private factor favors transfer. *See In re Google*, No. 21-171, 2021 WL 4592280, at *7 (Fed. Cir. Oct. 6, 2021) (reversing denial of transfer where "there is nothing at all that ties this case to the Western District of Texas: no witnesses reside there; no evidence is present there; and none of the conduct giving rise to this action took place there"); *see also VirtaMove, Corp. v. Google LLC*, No. 7:24-cv-00033-DC-DTG, 2025 WL 2634158, at *1–2 (W.D. Tex. May 7, 2025) (transferring a patent action out of this Division under Section 1404(a) for lack of any connection to the forum).

The second and third private factors, "availability of compulsory process" and "cost of attendance for willing witnesses," also favor transfer. Though it is at this stage unknown what third parties may have relevant information and whether compulsory process will be necessary, it will certainly be more convenient and less costly for Vicor's witnesses to travel from Massachusetts to Delaware. "The convenience of witnesses is the single most important factor in the transfer analysis." *SynKloud Techs., LLC v. Dropbox, Inc.*, No. 6:19-CV-00525-ADA, 2020 WL 2494574, at *4 (W.D. Tex. May 14, 2020); *see also In re Pandora Media LLC*, No. 21-172, 2021 WL

4772805, at *3 (Fed. Cir. Oct. 13, 2021) ("[T]he convenience of the witnesses is an important consideration for both party witnesses and non-party witnesses.").

The Fifth Circuit has held that "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled" when the distance between the existing venue and a proposed venue is more than 100 miles. *In re Volkswagen AG*, 371 F.3d 201, 204–05 (5th Cir. 2004) ("*Volkswagen I*"). The "100 mile rule" favors transfer if the transferee venue is a shorter distance from witnesses than the transferor venue. *Volkswagen II*, 545 F.3d at 317. Travel from Vicor's headquarters in Massachusetts to this venue is over 1,500 miles longer than to Delaware. Conversely, the only known MPS witnesses, its inventors and patent counsel, are all based on the West Coast, thousands of miles from both venues. Thus, travel to Delaware would, for those witnesses, not be substantially less convenient than travel to this District.

The final private factor – "other practical problems that make trial of a case easy, expeditious and inexpensive" – also favors transfer. This case is in its infancy, and the parties and the Court do not risk any significant duplicative or wasted efforts in transfer. Moreover, MPS chose to litigate this very dispute in Delaware first, then voluntarily dismissed it and refiled here. MPS is also pursuing a second Delaware action, asserting a different patent, based in part on the very same alleged conduct of Vicor's field application engineers, and Vicor's provisioning of its power system configuration software tools. *Compare, e.g.*, Dkt. 1 at ¶¶ 30–32 *with* Ex. F (*MPS v Vicor* Delaware No. 1:26-cv-513 Complaint) at ¶¶ 30–32. The existence of multiple lawsuits involving the same issues "is a paramount consideration" when evaluating transfer. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). Judicial economy may be served even where the co-pending cases involve different patents or accused products. *In re Vistaprint*,

628 F.3d 1342, 1344 (Fed. Cir. 2010). Consolidating both cases before the same Court will necessarily result in efficiencies.

#### b. The Public Interest Factors Favor Transfer Because a Related Case Is Pending in Delaware, Which Also Has the Local Interest

The public interest points to Delaware as well. A second patent case between these same parties is already pending there, raising overlapping allegations. Delaware also has a local interest in resolving a dispute involving one of its own corporations, an interest this District lacks. *See, e.g., In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009). The remaining public interest factors are neutral.[3]

### B. MPS's Willful Infringement Claims Should Be Dismissed Because MPS Has Not Plausibly Alleged Vicor Had Knowledge of the Patent

To the extent the Court does not dismiss or transfer on venue grounds, it should dismiss MPS's claims of willful infringement for the independent reason that MPS fails to plead that Vicor knew of the asserted patent, or that its conduct infringed it. MPS offers only conclusory allegations that Vicor possessed the requisite knowledge of the patent and its alleged infringement before suit. Vicor's knowledge of MPS's complaint is not, in itself, sufficient to meet the pleading standard. *See Skysong Innovations, LLC v. CrowdStrike, Inc.*, No. 7:25-CV-00040-DC-DTG, 2026 WL 454991, at *2, *4 (W.D. Tex. Feb. 2, 2026), *report and recommendation adopted*, 2026 WL 451426 (W.D. Tex. Feb. 17, 2026).

---

[3] Although this District's historical time to trial is concededly shorter than Delaware's, the Federal Circuit has held that time to disposition is not "important enough to be assigned significant weight in the transfer analysis." *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380–81 (Fed. Cir. 2021).

#### 1. Pleading Willful Infringement Requires Facts Showing Knowledge of the Patent and of the Infringement

Enhanced damages for willful infringement should "generally be reserved for egregious cases typified by willful misconduct." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 106 (2016). Pleading willful infringement requires alleging facts plausibly showing that, as of the time of the claim's filing, the accused infringer: knew of the patents-in-suit, infringed the patents after acquiring that knowledge, and knew, or should have known, that its conduct in doing so amounted to infringement. *See Datanet LLC v. Dropbox Inc.*, No. 6:22-cv-1142, 2023 WL 7118041, at *3 (W.D. Tex. Oct. 27, 2023).

#### 2. MPS Does Not Plausibly Allege Pre-Suit Knowledge of the '202 Patent

MPS's willfulness allegations are found at paragraph 33 of the Complaint, which states that "[u]pon information and belief, Vicor has had knowledge of the '202 Patent since its issuance, because, as an active competitor to MPS, Vicor would have periodically investigated MPS's patent portfolio, particularly, on or about the time Vicor decided to assert its patents against its competitors, including, e.g., Delta Electronics and MPS." Dkt. 1 at ¶ 33. This wholly speculative statement does not make plausible that Vicor had the requisite knowledge or intent for willful infringement.

***First,*** MPS alleges that, because Vicor and MPS are competitors, Vicor must have become aware of the specific patent-in-suit. Courts have routinely rejected such reasoning. To the contrary, "[m]ultiple district courts, post-*Halo*, have held that . . . general knowledge of a patent portfolio without more . . . is insufficient even to plausibly allege knowledge of a particular asserted patent." *Kirsch Rsch. & Dev., LLC v. Tarco Specialty Prods.*, 2021 WL 4555802, at *2 (W.D. Tex. Oct. 4, 2021); *see also, e.g.*, *Dental Monitoring SAS v. Align Tech., Inc.*, No. 22-cv-07335, 2023 WL 4297570, at *6 (N.D. Cal. June 30, 2023) (noting that "knowledge of the existence of a patent

portfolio does not confer knowledge of individual patents or claims in that portfolio, let alone knowledge of their infringement.”); *Finjan, Inc. v. Cisco Sys., Inc.*, No. 17-cv-72, 2017 WL 2462423, at *5 (N.D. Cal. June 7, 2017) (“Knowledge of a patent portfolio generally is not the same thing as knowledge of a specific patent.”). Accordingly, MPS’s allegation that Vicor must have been aware of the ’202 patent because Vicor would have investigated MPS’s patent portfolio is insufficient to plausibly plead knowledge.

***Second,*** MPS’s allegation that, upon information and belief, Vicor would have been aware of the ’202 patent based on its pre-suit investigation in connection with Vicor’s assertion of ***Vicor’s patents*** against MPS and other competitors, is similarly speculative and entitled to no weight. MPS provides no specific facts suggesting that the ’202 patent is somehow relevant to Vicor’s infringement allegations against MPS (or any other party), nor does it articulate why Vicor would have studied the MPS ’202 ***patent*** to determine that MPS ***products*** infringe Vicor’s patents. MPS does not even identify the asserted Vicor patents, let alone discuss their claims. MPS’s allegations at paragraph 33 are wholly bereft of specific facts to support a finding of pre-litigation knowledge of any of MPS’s patents, let alone the ’202 patent, specifically, and thus they too are insufficient to support a claim for willful infringement.

MPS’s allegations of Vicor’s pre-suit knowledge of the ’202 patent, based solely on “information and belief,” and nothing more, are speculative and insufficient to plausibly plead willful infringement. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (“While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.”).

### 3. MPS Does Not Plausibly Plead Pre-Suit Knowledge of Infringement

Even taking as true MPS’s allegations that Vicor was in some way aware of the ’202 patent, MPS still does not plead facts that could support Vicor’s knowledge *of the alleged infringement*. “Knowledge of a patent is not the same thing as knowledge that a product or the use of that product

infringes the patent." *Boston Sci. Corp. v. Nevro Corp.*, 560 F. Supp. 3d 837, 843 (D. Del. 2021). MPS was thus required to plead facts that, in addition to knowledge of the patent, Vicor had knowledge that the complained-of acts actually constituted patent infringement. *Cleveland Med. Devices Inc. v. ResMed Inc.*, No. 22-794, 2023 WL 6389628, at *5 (D. Del. Oct. 2, 2023).

MPS merely concludes that Vicor's alleged infringement "[has been / is] and continues to be willful." Dkt. 1 at ¶¶ 34, 41. Although all reasonable inferences are resolved in favor of the plaintiff, the plaintiff must still plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). MPS does not allege it contacted Vicor before filing its successive complaints in Delaware and Texas, and it never alleges *why* Vicor would have *sua sponte* understood that any of its products would infringe any claim of the '202 patent.

#### 4. The Complaint Itself is Insufficient to Establish the Requisite Knowledge for Willfulness

MPS's allegation at paragraph 33 that "[a]t the very least, Vicor has had knowledge of the Asserted Patent as of the filing of this Complaint" is also insufficient to confer the requisite knowledge for willfulness. The Federal Circuit has not squarely addressed this issue. But courts have increasingly held that such claims require more than an allegation of knowledge stemming from the filing of the complaint. *See ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 251–52 (D. Del. 2021) (collecting cases and noting "the operative complaint in a lawsuit fails to state a claim for indirect patent infringement where the defendant's alleged knowledge of the asserted patents is based solely on the content of that complaint"); *VLSI Tech. LLC v. Intel Corp.*, No. 18-966, 2019 WL 1349468, at *2 (D. Del. Mar. 26, 2019) ("The purpose of a complaint is not to create a claim but rather to obtain relief for an existing claim.").

Chief Judge Connolly in the District of Delaware explained in *ZapFraud* that it would be incongruous to allow a plaintiff "to prove an element of a legal claim with evidence that the plaintiff filed the claim" and further noted, "[i]t seems to me neither wise nor consistent with principles of judicial economy to allow court dockets to serve as notice boards for future legal claims for indirect infringement and enhanced damages." 528 F. Supp. 3d at 251–52. Other courts have similarly dismissed willful infringement claims where knowledge of the patent is predicated on the complaint. *See*, *e.g.*, *Sonos, Inc. v. Google*, 591 F. Supp. 3d 638, 648 (N.D. Cal. 2022) ("[T]he complaint will generally not be adequate to serve as notice for either willful or indirect infringement."); *Orlando Commc'ns v. LG Elecs.*, No. 6:14-cv-1017, 2015 WL 1246500, at *9 (M.D. Fla. Mar. 16, 2015) ("If, as Plaintiff suggests, failure to allege presuit knowledge could be cured merely by filing another complaint (without alleging new [pre-suit] facts), then the knowledge requirement would be superfluous.").

The Court should thus dismiss the entirety of MPS's claim for willful infringement because the filing of suit itself should not serve as the basis for a defendant's actionable knowledge.

#### 5. Even Crediting Knowledge, MPS Alleges No Egregious Conduct Warranting Enhanced Damages

Even crediting Vicor's knowledge of the '202 patent as of MPS's recently-filed-then-withdrawn Delaware complaint, MPS pleads no post-knowledge conduct beyond continuing to sell the accused products while disputing infringement. That is not the egregious, wanton conduct for which enhancement is reserved, and this Court has dismissed willfulness claims on analogous facts. *Skysong*, 2026 WL 454991, at *4; *Datanet*, 2023 WL 7118041, at *6.

## V. CONCLUSION

This dispute belongs in Delaware, not the Western District of Texas, and MPS's willfulness allegations have no basis in its pleading. Vicor respectfully requests that the Court dismiss the

Complaint in its entirety for lack of venue, or in the alternative, transfer this action to the District of Delaware. If the Court does not dismiss or transfer, it should at least dismiss MPS's willful infringement claims for failure to plead actionable knowledge of the patent and the alleged infringement.

Dated: August 13, 2026

Respectfully submitted,

FISH & RICHARDSON P.C.

By: */s/ David M. Hoffman*
David M. Hoffman
Texas Bar No. 24046084
hoffman@fr.com
111 Congress Avenue, Suite 2000
Austin, TX 78701
Tel: (512) 472-5070
Fax: (512) 320-8935

Lawrence K. Kolodney (*pro hac vice* forthcoming)
kolodney@fr.com
One Marina Park Drive
Boston, MA 02210
Tel: (617) 542-5070

Warren K. Mabey, Jr. (*pro hac vice* forthcoming)
mabey@fr.com
222 Delaware Avenue, 17th Floor
Wilmington, DE 19899
Tel: (302) 652-5070

**COUNSEL FOR DEFENDANT,**
**VICOR CORPORATION**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on August 13, 2026, and was served via CM/ECF on all counsel of record.

*/s/ David M. Hoffman*
David M. Hoffman